**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION**

|  |  |  |
|---|---|---|
| | § | |
| WILLIAM J. ORTON, JR., | § | |
| | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. G-15-25 |
| | § | |
| MICHAEL PINES AND THE LAW | § | |
| OFFICES OF MICHAEL PINES, APC, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND OPINION**

William J. Orton, a Texan, sued Michael Pines, a Californian, and his California law firm, in Texas state court.  Orton alleged that Pines and his firm misappropriated Orton's name and likeness in a website posting seeking legal business.  Pines removed to federal court and moved to dismiss for lack of personal jurisdiction.  (Docket Entry No. 12).  He also moved to dismiss Orton's claims under the California and Texas anti-SLAPP ("Strategic Lawsuits Against Public Participation") provisions, (Docket Entry No. 11), and to stay discovery, (Docket Entry No. 13).  Orton responded.  (Docket Entry Nos. 15, 16, 17, 18).  Based on the pleadings, the motions, the briefs, the record, and the applicable law, the court grants Pines's motion to dismiss for lack of personal jurisdiction and denies the remaining motions as moot.  An order of dismissal is entered separately.

The reasons are stated in detail below.

1

## I.      Background

In October 2009, Michael Pines published an article on his law firm's website, seriousaccidents.com, entitled "Medical Malpractice Lawsuit Leads To $4M Settlement." (Docket Entry No. 12, Ex. B). The article described a recent Texas state-court jury verdict that William Orton had obtained for injuries he suffered from a failed operation. The article referred readers to a link with information about assessing hospital quality before surgery. The article also directed readers to contact Pines or his law office for a "free consultation with an experienced personal injury attorney" if they thought they had been victims of malpractice. (*Id.*). Orton discovered the post in the fall of 2013. He sued Pines and his law firm in Texas state court about a year later, alleging that the defendants "knowingly us[ed] [his] name and/or likeness for the purposes of advertising or selling or soliciting the purchase of goods or services without his consent," violating Texas and California state law. (Docket Entry No. 1-3, ¶ 4). He sought compensatory and punitive damages, and attorney's fees.

The defendants removed to federal court on the basis of diversity jurisdiction. (Docket Entry No. 1). Orton filed a motion to remand, which the court denied. (Docket Entry No. 14). The defendants filed several motions, including a motion to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2). (Docket Entry Nos. 11, 12, 13). Orton responded. (Docket Entry Nos. 15, 16, 17, 18).

The motion to dismiss and the parties' arguments are analyzed below.

## II.     The Legal Standard for Personal Jurisdiction

Under Federal Rule of Civil Procedure 12(b)(2), the "plaintiff bears the burden of establishing a district court's jurisdiction over a non-resident." *Johnston v. Multidata Sys. Int'l*

*Corp.*, 523 F.3d 602, 609 (5th Cir. 2008).  A plaintiff must make a *prima facie* showing that the defendant is subject to personal jurisdiction; "[p]roof by a preponderance of the evidence is not required." *Bullion v. Gillespie*, 895 F.2d 213, 217 (5th Cir. 1990) (citing *D.J. Invs. Inc. v. Metzeler Motorcycle Tire Agent Gregg, Inc.*, 754 F.2d 542, 545–46 (5th Cir. 1985)).  At the motion stage, "uncontroverted allegations in the plaintiff's complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in the plaintiff's favor."  *Id.*

"A federal court sitting in diversity may exercise personal jurisdiction over a non-resident defendant (1) as allowed under the state's long-arm statute; and (2) to the extent permitted by the Due Process Clause of the Fourteenth Amendment."  *Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 398 (5th Cir. 2009).  The Texas long-arm statute extends to the limits of due process.  *Id.*  To satisfy due process, the plaintiff must demonstrate "(1) that the non-resident purposefully availed himself of the benefits and protections of the forum state by establishing 'minimum contacts' with the state; and (2) that the exercise of jurisdiction does not offend 'traditional notions of fair play and substantial justice.'"  *Johnston*, 523 F.3d at 609 (citation omitted).

"A defendant establishes minimum contacts with a state if 'the defendant's conduct and connection with the forum state are such that [he] should reasonably anticipate being haled into court there.'"  *Nuovo Pignone, SpA v. Storman Asia M/V*, 310 F.3d 374, 379 (5th Cir. 2002) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985)).  "There are two types of 'minimum contacts': those that give rise to specific personal jurisdiction and those that give rise to general personal jurisdiction."  *Lewis v. Fresne*, 252 F.3d 352, 358 (5th Cir. 2001).  A court has general jurisdiction over a nonresident defendant "to hear any and all claims" against him when his contacts with the state are so "'continuous and systematic' as to render [him] essentially at home in the

forum." *Goodyear Dunlop Tires Operations v. Brown*, 131 S. Ct. 2846, 2851 (2011).  Orton does not rely on general jurisdiction.  The only issue is specific jurisdiction.

"In contrast to general, all-purpose jurisdiction, specific jurisdiction is confined to adjudication of 'issues deriving from, or connected with, the very controversy that establishes jurisdiction.'"  *Id.* at 2851 (citation omitted).  The question is "whether there was 'some act by which the defendant purposefully avail[ed] [himself] of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'"  *Id.* at 2854 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)).  "For a State to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum State."  *Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014).

A defendant's suit-related conduct creates a sufficient relationship with the forum state only if the relationship arises out of "contacts that the 'defendant himself' creates with the forum State."  *Walden*, 134 S. Ct. at 1122 (quoting *Burger King*, 471 U.S. at 475).  The limits imposed on a state's "adjudicative authority principally protect the liberty of the nonresident defendant—not the convenience of the plaintiff[] or third parties."  *Id.* (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291–92 (1980)).  The Supreme Court has "consistently rejected attempts to satisfy the defendant-focused 'minimum contacts' inquiry by demonstrating contacts between the plaintiff (or third parties) and the forum State."  *Id.* (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417 (1984)).  The "unilateral activity of another party or a third person is not an appropriate consideration when determining whether a defendant has sufficient contacts with a forum State to justify an assertion of jurisdiction."  *Id.*  "Put simply, however significant the plaintiff's contacts with the forum may be, those contacts cannot be 'decisive in determining

whether the defendant's due process rights are violated.'" *Id.* (quoting *Rush v. Savchuk*, 444 U.S. 320, 332 (1980)).

The issue is not only the defendant's contacts, but the contacts "with the forum State itself," as opposed to contacts with "persons who reside there." *Id.* (citations omitted). A "plaintiff cannot be the only link between the defendant and the forum. Rather, it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him." *Id.* "[A] defendant's contacts with the forum State may be intertwined with his transactions or interactions with the plaintiff or other parties. But a defendant's relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction." *Id.* at 1123. "Due process requires that a defendant be haled into court in a forum State based on his own affiliation with the State, not based on the random, fortuitous, or attenuated contacts he makes by interacting with other persons affiliated with the State." *Id.* (quotation omitted); *see AllChem Performance Prods., Inc. v. Aqualine Warehouse, LLC*, 878 F. Supp. 2d 779, 787 (S.D. Tex. 2013) ("[S]pecific jurisdiction may not be based on the mere fortuity that a plaintiff is a Texas resident").

## III.   Analysis

Michael Pines resides in California; he has never been a Texas resident or done business there. (Docket Entry No. 12, Ex. A). His law firm is based in and incorporated under the laws of California. It has never conducted business in Texas. (*Id.*). Pines's website, although accessible in Texas, is not directed towards Texas residents and does not transact business with Texas residents. *See Revell*, 317 F.3d at 471 ("Though the maintenance of a website is, in a sense, a continuous presence everywhere in the world, the cited contacts of Columbia with Texas are not in any way 'substantial.'").

Pines was not served in Texas. *Cf. Burnham v. Superior Court of Cal., Cnty. of Marin*, 495 U.S. 604, 610, 619 (1990) (plurality op.) (exercising general jurisdiction over a "defendant [who] is physically present in the State at the time process is served upon him" does not offend due process). Pines has only visited Texas on a few isolated occasions. Apart from changing planes in Texas airports, his only visits to the State occurred three years ago, when he visited Southern Methodist University's campus with his daughter, and more than 18 years ago, when he attended a seminar. (Docket Entry No. 12, Ex. A). Neither visit forms the basis of Orton's misappropriation allegations.

Orton argues that specific jurisdiction is nonetheless proper because Pines and his law firm "purposefully chose to use, or misuse, [Orton's] name and likeness on their website, with full knowledge that [he] was a citizen of Texas." (Docket Entry No. 15, at 2). In *Walden*, the Supreme Court rejected a similar argument. The plaintiffs in that case were Nevada residents. The defendant, a Drug Enforcement Agency agent, detained the plaintiffs while they were traveling through the Atlanta, Georgia airport. After questioning them and searching their luggage, the DEA agent seized $97,000, which the plaintiffs alleged were legal gambling proceeds. *Walden*, 134 S. Ct. at 1119, 1124. The agent allegedly then "helped draft a 'false probable cause affidavit' in Georgia and forwarded that affidavit to the United States Attorney's Office in Georgia to support a potential action for forfeiture of the seized funds." *Id.* The plaintiffs sued the DEA agent in Nevada, arguing that he violated their constitutional rights. The Ninth Circuit allowed the suit to proceed on the basis of the DEA agent's "knowledge of [the plaintiffs'] 'strong forum connections'" and because the plaintiffs "suffered foreseeable harm in Nevada." *Id.* (quoting *Fiore v. Walden*, 688 F.3d 558, 577-79, 581 (9th Cir. 2011)). The Supreme Court reversed, concluding that the Ninth Circuit's

6

"approach to the 'minimum contacts' analysis impermissibly allows a plaintiff's contacts with the defendant and forum to drive the jurisdictional analysis." *Id.* at 1125.

Pines is not subject to specific jurisdiction. Here, as in *Walden*, even assuming that Pines knew his actions could harm Orton in Texas, Pines "never traveled to, conducted activities within, contacted anyone in, or sent anything or anyone to" Texas. *See id.* at 1124. Although Pines discussed Orton's malpractice suit in a web posting accessible in Texas, and *Walden* reserved the "questions whether and how a defendant's virtual 'presence' and conduct translate into 'contacts' with a particular State . . . for another day," *see id.* at 1125 n.9, specific jurisdiction does not arise. Under well-established case law before and after *Walden*, Pines's limited virtual presence and conduct did not create sufficient contacts with Texas to permit exercising specific jurisdiction over him in that State.

This circuit has used the approach of *Zippo Manufacturing Co. v. Zippo Dot Com, Inc.,* 952 F. Supp. 1119 (W.D. Pa. 1997), to determine whether a website can provide the minimum contacts for personal jurisdiction. *Mink v. AAAA Development LLC*, 190 F.3d 333, 336 (5th Cir. 1999). *Zippo* used a "sliding scale" to measure an internet site's connections to a forum state. *Zippo*, 952 F. Supp. at 1124. A "passive" website that merely allows the owner to post information on the internet is at one end of the scale. The fact that the website is accessible in the forum state does not show personal jurisdiction over a foreign defendant in that state. At the other end of the scale are websites that result in repeated online contacts with forum residents over the internet. In these cases, personal jurisdiction may be proper. *Id*. In between are those sites with some interactive elements that allow bilateral information exchanges.

Orton's allegations are based on a single posting from California primarily directed at

Californians who might want to seek Pines's legal services.  The website provided links for contact and other information as well as a link to submit case information for review.  (*See* Docket Entry Nos. 12, Ex. B).  The website did not directly allow users to enter into a contract or conduct business with Pines or his law firm.  Such passive websites and websites with limited interactivity, even if accessible in the forum state, do not create or show personal jurisdiction.  *See Mink*, 190 F.3d at 337 (passive website that provided mail-in form, telephone number, and email address could not establish jurisdiction); *Revell v. Lidov*, 317 F.3d 467, 470 (5th Cir. 2002); *Mothers Against Drunk Driving v. DAMMADD, Inc.*, No. Civ.A. 302CV1712G, 2003 WL 292162, at *6 (N.D. Tex. Feb. 7, 2003) (finding no specific jurisdiction over out-of-state company whose website's interactivity fell "within the middle range of the *Zippo* spectrum" because the "web-based contacts simply fail[ed] to paint the picture of a significantly commercial website that [wa]s visited regularly by Texas residents"); *cf. Kelly Law Firm P.C. v. An Attorney for You*, 679 F. Supp. 2d 755, 767 (S.D. Tex. 2009) (finding specific jurisdiction proper based on the defendant law firm's "website that specifically target[ed] plaintiffs in Texas and gather[ed] information from them" and allowed them to "enter into contractual relationships with Texas attorneys who pay Calliope for referrals from the website").

Although Pines's posting identified Orton and described the Texas jury verdict he had recovered for medical malpractice, the posting was primarily directed towards potential legal clients in California, not Texas.  *See Clemens v. McNamee*, 615 F.3d 374, 380 (5th Cir. 2010) ("The statements were not made in Texas or directed to residents of Texas.").  Orton argues that he suffered harm in Texas, but that is not sufficient.  *See Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 401 (5th Cir. 2009) ("Under *Calder*, . . . the plaintiff's residence in the forum, and suffering of harm

there, will not alone support [personal] jurisdiction."). Orton has failed to make a *prima facie* showing that the defendants have sufficient contacts with Texas to make them amenable to personal jurisdiction here.[1]

## IV.      Conclusion

The defendants' motion to dismiss for lack of personal jurisdiction, (Docket Entry No. 12) is granted. The defendants' remaining motions, (Docket Entry Nos. 11, 13), are denied as moot. An order of dismissal is separately entered.

SIGNED on April 13, 2015, at Houston, Texas.

Lee H. Rosenthal
United States District Judge

---

[1] The court need not consider whether exercising jurisdiction would offend traditional notions of fair play and substantial justice.

9